Filed 2/11/25  P. v. Kemp CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099377 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE003496) |
| v. | |
| JAMAL KEMP, | |
| Defendant and Appellant. | |

In 2020, defendant Jamal Kemp pleaded no contest to attempted murder and admitted using a firearm.  In 2022, he filed a petition for resentencing under what is now Penal Code section 1172.6.[1]  The trial court denied the petition, reasoning that Kemp was ineligible for relief because his plea occurred after the Legislature had eliminated liability for attempted murder under the natural and probable consequences doctrine.  In this court, the People concede that this reasoning was in error but argue that the testimony at the preliminary hearing nevertheless establishes that Kemp is ineligible for resentencing as a matter of law.  We disagree with the People's argument and reverse.

---

[1]  Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

### I.

The first amended information charged Kemp with two counts of attempted murder, two counts of assault with a firearm, and one count each of negligent discharge of a firearm, possession of a firearm by a felon, criminal threats, and dissuading a witness. (§§ 664, 187, 245, subd. (a)(2), 246.3, 29800, subd. (a)(1), 422, 136.1, subd. (b)(2).) Each of these crimes was alleged to have occurred in 2019. The People also alleged that Kemp used a firearm in the attempted murders, among other enhancements. (§ 12022.53, subd. (b).)

At the preliminary hearing, T.D., the mother of Kemp's children, testified that someone broke a window in her apartment on the night of the shooting. She went outside to investigate with her cousin, J.B., and then heard about five shots fired. T.D. could not see who was shooting. She heard a woman scream, "Stop Jamal." T.D. saw Kemp and an unknown woman get out of the car that was the source of the gunfire. The gunfire struck J.B.

T.D. further testified that, on the night of the shooting, she did not know who fired the shots and she told officers that night that she did not know who had shot J.B. Later, T.D. told detectives that Kemp was the shooter. T.D. thought Kemp fired the shots because J.B. had told her it was him. T.D. also testified that, after the shooting, Kemp told her that he hated her and wished she were dead. She testified that Kemp told her that he was aiming the bullets at her but missed because she had ducked.

Police detectives also testified at the preliminary hearing. The first located video footage of the night of the shooting from the apartment manager. One video showed a person going up the stairs with an object in hand; moments later, the person came running down the stairs. T.D. and J.B. came racing out after the person.

A second camera captured J.B. running next to a car. When J.B. started to run away, a person got out on the passenger side and fired several times at her with a handgun. The detective was unable to identify the shooter from the video.

The detective testified that, after the shooting, T.D. told him that Kemp was the shooter. Separately, the detective interpreted comments by J.B. to mean that Kemp was the person who shot her.

A second detective testified that he interviewed Kemp's girlfriend, D.B., about the shooting. D.B. told the detective that she and Kemp went to T.D.'s home, where D.B. broke a window and ran back to the car. D.B. said that she was in the driver's seat and Kemp was in the passenger seat. As they tried to drive out of the parking lot, two women chased them. D.B. stopped the car, and Kemp jumped out and shot at the women. D.B. also told the detective that one of the women chasing them was reaching into her waistband as if to pull out a gun when Kemp jumped out of the car and fired at her.

Kemp agreed to plead no contest to one count of attempted murder and one count of dissuading a witness; he also admitted that he used a firearm in the attempted murder. (§§ 664, 187, 136.1, subd. (b)(2), 12022.53, subd. (b).) In exchange, the parties stipulated to a sentence of 26 years in prison.

At the change-of-plea hearing on November 16, 2020, the prosecution recited a factual basis for Kemp's plea, stating: "[D]efendant committed a felony violation of Penal Code Section 664/187(a), in that he unlawfully and with malice aforethought attempted to murder [J.B.], a human being. [¶] In addition, in the commission of this offense, he personally used a firearm, that being a handgun within the meaning of [section] 12022.53[, subdivision ](b). Namely with regard to the specifics of this offense, the defendant did jump out of a car, fired six rounds at [J.B.] as she was running away from him, and one of the rounds did hit her in the foot."

The trial court asked defense counsel, "[s]tipulate to a factual basis?" Defense counsel responded: "I will stipulate there's a factual basis, yes, Your Honor." The court accepted Kemp's plea.

At a hearing in December 2020, the trial court sentenced Kemp to 26 years in state prison. This court affirmed the judgment.

## II.

In April 2022, Kemp filed a petition for resentencing pursuant to section 1172.6, a provision the Legislature adopted through Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).[2] The petition alleged that a criminal complaint was filed against him that allowed the prosecution to proceed under a theory of natural and probable consequences; that he was convicted of attempted murder after a plea; and that he could not presently be convicted of attempted murder because of changes made to sections 188 and 189 effective January 1, 2019.

After a hearing, the trial court denied the petition. The court reasoned that Kemp had pleaded to attempted murder after Senate Bill 1437 took effect. That meant "that the changes to sections 188 and 189, including the new limitations on attempted murder and elimination of the natural and probable consequences theory, immediately applied to [Kemp's] case." The court observed that "section 1172.6 is intended to permit individuals convicted 'under the former law' [citation] to obtain the benefits of S[enate] B[ill] 1437," and Kemp had "already reaped those benefits." He was therefore ineligible for resentencing as a matter of law.

Kemp appealed.

---

[2] Senate Bill 1437 enacted section 1170.95, and Kemp filed his petition under that section. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) We cite to the current section 1172.6 throughout this opinion.

## DISCUSSION

### I.

Effective January 1, 2019, Senate Bill 1437 narrowed the scope of the felony-murder rule and eliminated the natural and probable consequences doctrine as a basis for murder liability. (*People v. Das* (2023) 96 Cal.App.5th 954, 959.) The Legislature adopted the law "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Among other things, the enactment amended section 188 to require that a principal convicted of murder "act with malice aforethought." (Stats. 2018, ch. 1015, § 2, subd. (a)(3).) It further provided that malice "shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*) It also added a procedure, now codified in section 1172.6, to permit individuals convicted of murder under prior law to request that their conviction be vacated and to seek resentencing. (Stats. 2018, ch. 1015, § 4; *People v. Das*, *supra*, at p. 959.)

In 2021, the Legislature adopted Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) to expressly allow those convicted of attempted murder under the natural and probable consequences doctrine or manslaughter to seek resentencing under section 1172.6. (Stats. 2021, ch. 551, § 2, subd. (a); *People v. Das*, *supra*, 96 Cal.App.5th at p. 959.) The Legislature enacted the provision to "clarif[y] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) The law took effect on January 1, 2022. (*People v. Das*, *supra*, at p. 959.)

As amended (and as relevant here), section 1172.6 provides that a person convicted of attempted murder under the natural and probable consequences doctrine

5

may file a petition to have his or her conviction vacated when: (1) the charges filed against the person allowed the prosecution to proceed on a theory of attempted murder under the natural and probable consequences doctrine; (2) the person was convicted of attempted murder after trial or accepted a guilty plea in lieu of a trial at which he or she could have been convicted of attempted murder; and (3) the person could not presently be convicted of attempted murder because of changes to section 188 made effective January 1, 2019. (§ 1172.6, subd. (a)(1)-(3).)

After briefing on the petition, the trial court must hold a hearing and determine whether the petitioner has made out a prima facie case for relief. (§ 1172.6, subd. (c).) If the petition and record "establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) If instead the petition shows a prima facie entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioning defendant is guilty of attempted murder under section 188 as amended. (*Ibid.*; § 1172.6, subds. (c), (d)(1) & (3).) If the prosecution fails to carry its burden, the challenged conviction and any accompanying allegations or enhancements must be vacated and the petitioner resentenced on any remaining charges. (§ 1172.6, subd. (d)(3).)

A trial court's inquiry into whether a petitioner has stated a prima facie case for relief is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) The court takes the petitioner's " ' "factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid.*) Trial courts may examine the record of conviction to determine whether a petitioning defendant has established a prima facie entitlement to relief. (*Id.* at pp. 970-972.) If the record contains facts refuting the allegations in the petition, the court may make a credibility determination adverse to the petitioner. (*Id.* at p. 971.) But a trial court may "not engage in 'factfinding involving the weighing of evidence or the exercise

6

of discretion.' " (*Id.* at p. 972.) As our state high court has explained, the " 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)

We review de novo a trial court's decision to deny a section 1172.6 petition at the prima facie stage. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

II.

Kemp argues that the trial court erred in concluding that his plea to attempted murder in November 2020, after the enactment of Senate Bill 1437, established his ineligibility for resentencing as a matter of law. The People concede that Kemp's plea, on its own, does not preclude relief under section 1172.6.

We accept the People's concession because section 1172.6 did not expressly apply to attempted murder at the time Kemp pleaded no contest to that charge. When Kemp changed his plea in November 2020, Senate Bill 1437 had eliminated murder liability based on the natural and probable consequences doctrine. (See § 188, subd. (a)(3).) But before the Legislature adopted Senate Bill 775, the Courts of Appeal were divided on whether Senate Bill 1437 had abrogated the natural and probable consequences doctrine as a valid basis for an attempted murder prosecution. (See *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222.) It was not until January 2022—more than a year after Kemp's no contest plea—that Senate Bill 775 became effective and the law expressly eliminated that possibility. (Stats. 2021, ch. 551, §§ 1, subd. (a), 2; *People v. Das*, *supra*, 96 Cal.App.5th at p. 959.) It therefore would have been theoretically possible, at the time of Kemp's prosecution, for the People to proceed against him under a natural and probable consequences theory of attempted murder. Accordingly, Kemp's plea to attempted murder after the effective date of Senate Bill 1437, but before Senate Bill 775's adoption, does not, standing alone, establish his ineligibility for resentencing as a matter of law.

The People contend that the trial court was nevertheless correct in denying Kemp's petition because, they argue, the testimony at the preliminary hearing establishes

7

as a matter of law that the prosecution could not have proceeded on a theory of attempted murder under the natural and probable consequences doctrine and that Kemp could still be convicted of attempted murder on a valid theory. (§ 1172.6, subd. (a)(1) & (3).) That testimony was not before the trial court in this case. It is before us on appeal only because we granted the People's motion to incorporate it into the record. Kemp therefore did not have the opportunity to object to the testimony before the trial court, and the court did not address it in denying Kemp's petition.

In any event, we decline the People's invitation to rely on the preliminary hearing transcript to reject Kemp's petition because doing so would require us to engage in judicial factfinding that is not permitted at the prima facie stage. Courts of Appeal have reached different conclusions on whether and to what extent a court may consider evidence elicited at a preliminary hearing when evaluating the sufficiency of a section 1172.6 petition. (*People v. Flores* (2022) 76 Cal.App.5th 974, 989; *People v. Williams* (2024) 103 Cal.App.5th 375, 389-394, review granted Sept. 11, 2024, S286314 [discussing cases].) Our Supreme Court is poised to address the issue in *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670.

Until it does, we agree with those courts that have concluded that, absent the defendant's stipulation or admission to facts adduced at a preliminary hearing, a trial court may not rely on a preliminary hearing transcript to deny a petition at the prima facie stage. (*People v. Williams*, *supra*, 103 Cal.App.5th at p. 398; *People v. Flores*, *supra*, 76 Cal.App.5th at pp. 991-992; *People v. Davenport* (2021) 71 Cal.App.5th 476, 481-482.) As one court explained, the primary purpose of a preliminary hearing is to determine whether probable cause supports the felony charge. (*People v. Williams*, *supra*, at p. 397.) It does not definitively establish a defendant's guilt under any particular theory of criminal liability, and "the prosecution's trial strategy is not limited to the evidence presented at the preliminary hearing." (*Id.* at p. 398.) Accordingly, "even if the transcript suggests the prosecution pursued only a direct perpetrator theory of murder

or attempted murder," it "does not conclusively establish a theory of guilt and thus is insufficient to rebut the petitioner's factual allegations." (*Id.* at p. 404.)

A contrary conclusion would require the sort of judicial factfinding that our Supreme Court has consistently rejected. As the state high court has explained, "[a]t the prima facie stage, a court must accept as true a petitioner's allegation . . . unless the allegation is refuted by the record." (*People v. Curiel* (2023) 15 Cal.5th 433, 463.) The petitioner's allegations are "not refuted by the record unless the record conclusively establishes every element of the offense." (*Ibid.*) And in analyzing the record, the trial court "should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 974.) This means that the inquiry at the prima facie stage "is a test of the petitioner's pleaded allegations, not an inquiry into the truth of those allegations and the credibility of the evidence on which they may rely." (*People v. Davenport*, *supra*, 71 Cal.App.5th at p. 483.) Reliance on the facts presented by the prosecution at the preliminary hearing to evaluate the merits of a petitioner's allegations would improperly "convert the prima facie inquiry into a factual contest, which is reserved for evidentiary hearings" after an order to show cause is issued. (*Ibid.*)

In this case, Kemp submitted a facially sufficient petition, and the People do not contend that his admission to attempted murder and the accompanying firearm enhancement refutes the petition's allegations. Moreover, the testimony at the preliminary hearing does not conclusively refute the allegations in Kemp's petition. T.D. is the only percipient witness who testified about the events on the night of the shooting. As the People contend, various aspects of her testimony implicated Kemp as the shooter: she heard someone say "Stop, Jamal" when the shots were being fired; J.B. told her that Kemp was the shooter; and Kemp later told T.D. that he was aiming the bullets at her. But T.D. also testified that two people were by the car that was the source of the gunfire, and T.D. herself did not see who fired the shots. For a court to deny a petition at the

prima facie stage based on this testimony would require it to weigh T.D.'s various statements and determine whether they established that Kemp had the requisite intent to kill and committed the necessary acts to be liable for attempted murder under current law. That exercise would involve impermissible " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 974; see also *People v. Flores*, *supra*, 76 Cal.App.5th at pp. 991-992 [reversing denial of petition where finding the "petitioner ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage"].)

The other testimony that affirmatively identified Kemp as the shooter was from two detectives reporting statements from T.D., J.B., and D.B. The People have made no showing, however, that a court can properly consider this hearsay evidence. Under section 1172.6, subdivision (d)(3), a trial court conducting an evidentiary hearing following the issuance of an order to show cause may not consider law enforcement officer hearsay evidence admitted at a preliminary hearing pursuant to section 872, subdivision (b), "unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).) The People have not offered any basis for the application of an exception to the hearsay rule with respect to this testimony. And if such hearsay testimony cannot "be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores*, *supra*, 76 Cal.App.5th at p. 988 [discussing similar limitation on consideration of prior appellate opinions at evidentiary hearings under § 1172.6, subd. (d)(3)]; *People v. Williams*, *supra*, 103 Cal.App.5th at p. 397, fn. 11.)

10

## DISPOSITION

The trial court's order denying Kemp's petition for resentencing is reversed.  The case is remanded to the trial court with directions to issue an order to show cause and to hold an evidentiary hearing on his petition.


                                        /s/\
                                          FEINBERG, J.


I concur:


 /s/\
MAURO, J.

11

HULL, Acting P. J., Concurring.

I concur in this opinion, but I write separately to note the following.

As the opinion sets forth, the first amended information charged defendant with two counts of attempted murder, two counts of assault with a firearm, and one count each of negligent discharge of a firearm, possession of a firearm by a felon, criminal threats, and dissuading a witness along with various enhancements.

Pursuant to a negotiated plea, defendant later pleaded no contest to one count of attempted murder and one count of dissuading a witness. He also admitted he used a firearm during the attempted murder. The plea colloquy included the following exchange among the court, the district attorney and the defendant's attorney:

"THE COURT: Factual basis?

"[The District Attorney]: Count 1, on January 25th, 2019, in Sacramento county [*sic*], the defendant committed a felony violation of Penal Code Section 664/187(a), in that he unlawfully and with malice aforethought attempted to murder [J.B.], a human being.

"In addition, in the commission of this offense, he personally used a firearm, that being a handgun within the meaning of 12022.53(b). Namely with regard to the specifics of this offense, the defendant did jump out of a car, fired six rounds at [J.B.] as she was running away from him, and one of the rounds did hit her in the foot.

"With regards to Count 8, between October 1st, 2019 and November 23rd 2019, in Sacramento county [*sic*], the defendant committed a felony violation of Penal Code Section 136.l(b)(2), in that he unlawfully attempted to prevent and dissuade [D.B.], a victim and witness of the crime the People just discussed in Count 1, from causing a complaint to be sought against him and keeping the prosecution from prosecuting the defendant for this offense.

1

"An additional enhancement, the defendant did this act knowingly and maliciously and the act was accompanied by force, express and implied threat of violence and force upon [D.B.] and her son.

"This offense was -- came through jail calls, where the defendant is heard threatening to kill [D.B.] because she's working with the prosecution to prosecute the defendant in Count 1.

"Count 1 is a serious and violent felony within the meaning of Penal Code Section 1192.7(c)(8).

"In addition, as a prior conviction No. 1, that applies to both Count 1 and Count 8, the defendant on November 26th, 2012, in the county of Solano, in the state of California, was convicted of the crime of assault with a semi-automatic firearm in violation of Penal Code Section 245(b).  This is a serious felony within the meaning of Section 1192.7(c), and thus comes within the provisions of 667(b) through (i), and 1170.12 of the Penal Code.

"The People will strike the allegation under 667(a), in light of the resolution.

"THE COURT:  Stipulate to a factual basis?

"[Defendant's Attorney]:  I will stipulate there's a factual basis, yes, Your Honor. At the time of sentencing on the 15th, after receiving probation recommendations, I will be asking the Court to impose 80 percent credits on his time."

In my view, defendant, through his attorney, stipulated that the facts stated by the district attorney, which facts formed the basis for his crimes, were true.  Those facts demonstrated beyond question that the defendant was not prosecuted for his crimes based on any theory of imputed malice and, thus, his petition was properly denied at the prima facie stage of the proceedings albeit for the wrong reasons.

Even so, the Attorney General did not raise or rely here on this argument for affirming the trial court's order and because of that, we need not address this point

2

in this opinion.

/s/
HULL, Acting P. J.